# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:**<br><br>SCOTT FRANK BARNARD,<br><br>      **Debtor.** | **Bankruptcy Case<br>No. 05-03258** |

_____

| | |
|---|---|
| CATHERINE MARY<br>ALBAUGH,<br><br>           **Plaintiff,**<br><br>**vs.**<br><br>SCOTT FRANK BARNARD,<br><br>           **Defendant.** | Adv.  Proceeding<br>No. 05-6069 |

_____

### MEMORANDUM OF DECISION

_____

**Appearances:**

      Catherine Mary Albaugh, New Port Richey, Florida, Pro Se Plaintiff.

      Scott Frank Barnard, Star, Idaho, Pro Se Defendant.

      Plaintiff Catherine Albaugh asks the Court to determine that the

debts owed to her by chapter 7 debtor Scott Barnard arising out of the parties'

MEMORANDUM OF DECISION - 1

Divorce Decree and Marital Settlement Agreement be excepted from Defendant's chapter 7 discharge.  The Court conducted a trial in this adversary proceeding on August 24, 2006, at which the parties appeared and presented evidence and testimony.  After careful consideration of the evidence and testimony, the Court concludes the debts should be excepted from Defendant's discharge.  The following constitutes the Court's findings of fact, conclusions of law and disposition.  Fed. R. Bankr. P. 7052.

### Findings of Fact[1]

Plaintiff and Defendant were married for twenty-four years prior to the formal dissolution of their marriage in Florida by order entered September 1, 2004.  Ex. 1.  The Final Judgment of Dissolution of Marriage (the "Judgment"), Ex. 1, incorporated the parties' Marital Settlement Agreement (the "Agreement"), Ex. 2.  The Judgment and Agreement provided for the division of the parties' assets and debts, as well as resolving issues regarding child custody and support, insurance and alimony.

---

[1] These findings include both disputed and undisputed facts.  In deciding disputed issues of fact, the Court carefully considered the testimony of the witnesses, and based upon its opportunity to observe them testify, assessed their credibility.  The Court's findings reflect its judgment on the weight to be given to that testimony.

MEMORANDUM OF DECISION - 2

### 1. The Support Obligations.

Pursuant to the Judgment, the parties' two minor children were to reside with Plaintiff, and Defendant was ordered to pay monthly child support in the amount of $1,400. Agreement at 7. Defendant was ordered to maintain medical insurance for the benefit of two minor children and to pay for 75% of uncovered medical expenses. *Id.* at 8. Defendant was also ordered to maintain a life insurance policy on his life in the amount of $500,000, with Plaintiff as the designated beneficiary.

Defendant was also ordered to pay Plaintiff $1,000 per month for alimony until such time as Plaintiff remarried or died. Agreement at 14–15. In addition, Defendant was directed to pay the $100,000 Wachovia Equity Line of Credit secured by the parties' residence. The Agreement specified this obligation was to be in the nature of support to Plaintiff. *Id.*

### 2. Property and Debt Division.

Plaintiff was awarded the equity in parties' house, and she was obliged to pay the $320,000 first mortgage on the property. *Id.* at 8. Defendant received the parties' interest in two businesses acquired during the marriage, Precision Door, Inc. and HAPN, Inc. *Id.* at 14. Defendant was also required pay all the business debts, and specifically those debts owing to Aimee Dudley in the

MEMORANDUM OF DECISION - 3

amount of $75,000, Precision Door Services Corp. in the amount of $24,000 and Brandon Fraley in the amount of $100,000. Finally, Defendant was to pay the Visa debt of $29,000 that he incurred prior to and during the pendency of the divorce proceeding.

### 3. Defendant's Situation.

In the summer of 2004, Defendant relocated to Idaho and assisted Lori Schoenwald-Buster, whom he later married, in opening and operating a garage door business. Defendant then secured a consulting position with Albertsons. The two Florida businesses failed and Defendant lost his job with Albertsons at about the same time he purchased a 5,000 square foot, $600,000 home in Star, Idaho. He made no down payment on the house purchase. By the spring of 2005, Defendant's financial circumstances had deteriorated and he believed bankruptcy was his only option. He filed a voluntary petition under chapter 7 on August 24, 2005.

Since filing for bankruptcy relief, Defendant has worked regularly on a contract basis. Presently, Defendant works for TEKsystems Infrastructure[2] where he makes $50.00 per hour, resulting in a gross income of $2,000 each week.

---

[2] On the date of trial Defendant had a job interview with Micron. If he obtained the position with Micron, he would make less money but would have a permanent position with benefits.

MEMORANDUM OF DECISION - 4

Ex. D. After taxes, Defendant takes home approximately $1,500 per week.[3] Ex. D. Defendant testified that one-third of his income is consumed by taxes, and another one-third is committed to child support. Defendant needs the remainder of his income, about $2,667,[4] to pay living expenses.

Defendant testified his expenses have increased in recent months due to the failure of his latest marriage, which ended a few months ago. He now lives alone in the Star home. Defendant explained that he is not currently able to make his house payment and, because of the bankruptcy, he has been unable to refinance the mortgage or sell the home.

Defendant is delinquent on his child support payments; as of August 9, 2006, he owed $11,454.48. Ex. 4. Plaintiff testified that she has received a $500 payment from Defendant since that date. Defendant is not regularly paying child support as ordered because, he testified, his wages have not been garnished as in the past. Defendant has not secured the medical or life insurance coverage ordered in the Judgment and Agreement.

---

[3] The pay stub submitted includes 3.5 hours of overtime paid at the rate of $75.00 per hour for a total of $262.50. Defendant testified the company does not normally allow him to work overtime.

[4] $50/ hour x 40 hours/week x 4 weeks/ month ($8,000) divided by three.

MEMORANDUM OF DECISION - 5

### 4. Plaintiff's Situation.

Plaintiff is a nurse working in Florida. She was unable to afford the payments on the family home, so she sold it for $560,000. With the proceeds, Plaintiff paid off the $320,000 first mortgage, as well as the remaining balance due on the $100,000 equity line of credit Defendant had been ordered to pay. Plaintiff remarried and she, the parties' two children and her husband ("Mr. Albaugh") live in a modest two-bedroom home in Florida purchased for $107,000. Mr. Albaugh provides health insurance for the children.

Plaintiff testified she and Mr. Albaugh live frugally to ensure they have as little debt as possible. Plaintiff has been contacted by VISA attempting to collect on the credit card debt, which is now represented to be over $30,000. This debt impacts Plaintiff's credit because her name appears on the account and it has been referred to a collection agency. Bank of America has also contacted Plaintiff concerning some of the unpaid debts from the parties' former businesses. Plaintiff sent Bank of America a copy of the Judgment and Agreement and has had no further contact with the creditor. Additionally, Aimee Dudley has sought collection of the $75,000 debt from Plaintiff.

Plaintiff does not believe she will be able to pay the debts if Defendant's liability is discharged and repayment is sought by the creditors from

MEMORANDUM OF DECISION - 6

her. Plaintiff requests the Court order all obligations owing to her arising from the Judgment and Agreement be deemed excepted from discharge in Defendant's bankruptcy. Defendant contends he does not have sufficient income to repay these debts and, while he regrets Plaintiff will be liable for them, he believes a discharge represents his sole opportunity for financial recovery.

**Conclusions of Law**

**A. Discharge of Support and Divorce Debts.**

Section 523(a)(5)[5] excepts from discharge in bankruptcy debts for support owed to a former spouse. Plaintiff bears the burden of proof by a preponderance of the evidence that a debt is in the nature of support. *Mallo v. Mallo* (*In re Mallo*), 03.3 I.B.C.R. 196, 197 (Bankr. D. Idaho 2003)(citing *Stocks v. Calo* (*In re Calo*), 97.3 I.B.C.R. 87, 88 (Bankr. D. Idaho 1997)). "Whether an obligation is actually in the nature of support, and therefore nondischargeable in bankruptcy, is determined under federal law." *In re Kimball*, 253 B.R. 920, 923

---

[5] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, in effect prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

MEMORANDUM OF DECISION - 7

(Bankr. D. Idaho 2000) (citing *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984)).

Plaintiff submitted the Judgment and Agreement and supporting documentation to establish the amount of child support due from Defendant, including arrearages. Defendant was also obligated to provide medical insurance for the children, to pay 75% of all uncovered medical expenses, and to provide a life insurance policy for their benefit. Exs. 1–2; 4. Defendant does not dispute these obligations all represent support debts. The Court agrees and confirms that these debts are in the nature of support and are not subject to discharge in Defendant's bankruptcy case under § 523(a)(5).

### B. Dischargeability of Other Obligations Arising from the Divorce Decree.

A debt to a former spouse incurred by a debtor in the course of a divorce, or under a separation agreement, divorce decree or other court order, is not dischargeable in bankruptcy unless the debtor establishes:

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

MEMORANDUM OF DECISION - 8

> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

"[Plaintiff] bears the burden of making a *prima facie* case for application of the exception to her debt." *Edwards v. Edwards* (*In re Edwards*), 96.3 I.B.C.R. 105, 106 (Bankr. D. Idaho 1996). The burden then shifts to Defendant to show he should receive a discharge pursuant to either § 523(a)(15)(A) or (B). *Id.* Defendant need only demonstrate he satisfies one of these subsections as the statute clearly sets forth the conditions in the alternative. *Id.* (citing 11 U.S.C. § 102(5)). The standard of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

Plaintiff satisfied her burden by submission of the Judgment and Agreement in evidence. *See* Exs. 1–2. The Defendant's obligation described in these documents amount to approximately $228,000. These debts clearly arose in the course of the parties' divorce. The burden therefore shifts to Defendant to prove the facts necessary to discharge these debts under either § 523(a)(15)(A) or (B).

MEMORANDUM OF DECISION - 9

### 1. Ability to Pay under § 523(a)(15)(A).

To determine whether Defendant has the ability to pay the debts, the Court applies "the same analysis under Section 523(a)(15) as that used in Chapter 13 disposable income determinations." *Edwards*, 96.3 I.B.C.R. at 107 (citing *In re Jodoin*, 196 B.R. 845, 854 (Bankr. E.D. Cal. 1996); *In re Morris*, 193 B.R. 949, 953 (Bankr. S.D. Cal. 1996)). "The Court considers Defendant's annual income, reasonably necessary expenses, and reasonably projectable future events known at the time of trial." *Id.* (citing *Morris*, 193 B.R. at 953, n.6).

> In simple terms, the "disposable income" test requires the court to assess the debtor's budgeted necessary expenses to determine whether the debtor could afford to pay the obligation. Any income remaining after satisfying the debtor's budgeted necessary expenses is considered "disposable income" which can be applied towards the debtor's obligations.

*Prestwich v. Prestwich* (*In re Prestwich*), 01.3 I.B.C.R. 101, 102 (Bankr. D. Idaho 2001) (internal citations omitted).

Defendant argued he does not have the ability to pay the remaining debts as required by the divorce decree because his income is insufficient. Defendant is presently making $50 per hour, and anticipates this wage will continue through the end of the year. Contrary to his testimony that a child support garnishment takes one-third of his monthly income, Defendant admitted

MEMORANDUM OF DECISION - 10

his wages have not been garnished since he began his current employment. In addition, Defendant is not making his house payment because he feels he cannot afford the payment and is unable to sell or refinance the home because of the bankruptcy case.

The evidence shows Defendant is making approximately $8,000 a month before taxes, and he provided no proof as to his monthly living expenses. However, by the Court's calculation, even if Defendant was paying one-third of his monthly income to taxes and another third to child support, Defendant would still be left with over $2,600 a month to live on. Given the Court's familiarity with local living expenses, and considering Defendant's bankruptcy discharge, such a monthly income would likely leave Defendant with sufficient disposable income available to pay a considerable portion of the divorce debts.

But the Court need not speculate. It was Defendant's burden to prove he was unable to repay the debts, and he failed to do so. Thus, the divorce debts are not subject to discharge pursuant to § 523(a)(15)(A).

**2. The Detriment Test under § 523(a)(15)(B).**

The Court must next consider whether Defendant has shown that the benefit he would receive by the discharge of these debts outweighs the detriment Plaintiff will suffer if Defendant is relieved from his obligation to pay. 11 U.S.C.

MEMORANDUM OF DECISION - 11

§ 523(a)(15)(B).  The Court looks to the totality of the circumstances to make the required determination.  *Prestwich v. Prestwich*, (*In re Prestwich*), 01.3 I.B.C.R. 101, 103 (Bankr. D. Idaho 2001) (citations omitted).  In applying the totality of the circumstances analysis "the court considers several non-exclusive factors including the income and expenses of both parties; whether the non-debtor spouse is jointly liable on the debts; the number of dependents; the nature of the debts; the reaffirmation of any debts; and the non-debtor spouse's ability to pay." *Id*. (citing *Fitzsimonds v. Haines* (*In re Haines*), 210 B.R. 586, 594 (Bankr. S. D. Cal. 1997)).

  Defendant argues the benefit he would receive by a discharge of these debts would outweigh the detriment Plaintiff would suffer because he knows of no other way for him to get out from under his debt.  He does not know if Plaintiff has the means to pay the debts, but opines that her financial position is better than his, and even if she is financially pressed, she would "land on her feet" if she filed for bankruptcy in Florida.

  The divorce debts set forth in the Judgment and Agreement include one credit card account and various loans for the two businesses totaling approximately $228,000.  The evidence shows a discharge would be highly detrimental to Plaintiff, who has worked very hard to establish good credit and to

MEMORANDUM OF DECISION - 12

live within her means. She is fiercely opposed to the notion of filing for bankruptcy relief.

The Court was given little information regarding Plaintiff's actual income, other than Plaintiff's testimony that she lives without frills in a two-bedroom home to avoid incurring debt. Plaintiff is supporting the couple's two children and Mr. Albaugh is helping by providing the medical insurance coverage. Plaintiff has not been receiving any child support from Defendant, except for one recent $500 payment, substantially less than the $1,400 per month ordered by the divorce decree. Presently, Plaintiff is determining how to provide the orthodontics the parties' youngest child requires, without Defendant's financial assistance.

In addition, Plaintiff paid the $100,000 line of credit Defendant was ordered to pay as alimony. Testimony established the line of credit was used for the two businesses that Defendant was awarded in the divorce. Plaintiff is not seeking compensation from Defendant for that payment even though the Judgment and Agreement specified it was for her support. Since the debts described in the Judgment and Agreement were incurred during the parties' marriage, if Defendant's liability on the debts is discharged, Plaintiff will be liable for those

debts as evidenced by the collection calls and contacts from creditors she has already received.

Defendant had not made good financial choices since his divorce from Plaintiff. In spite of his extensive obligations to his children and Plaintiff, he foolishly purchased a large new home he could not afford. While he is employed on a contract basis, his job situation is frequently in flux, and he has failed to carry insurance coverage for the benefit of his children.

There is no doubt Defendant would recognize a considerable benefit by discharging the $228,000 in debt he was ordered to pay by the Florida court. However, considering the information provided to the Court regarding Plaintiff's circumstances, it seems Plaintiff will suffer a significant detriment if she is held responsible for these debts. Considering the totality of the circumstances, the Court concludes Defendant did not show by a preponderance of the evidence that the benefit of a discharge would outweigh the detriment to Plaintiff. To the extent Plaintiff is required to pay any of the debts Defendant was ordered to assume under the Judgment and Agreement, Defendant's obligation to reimburse Plaintiff for those payments will not be discharged.

MEMORANDUM OF DECISION - 14

### 3. Defendant is Not Entitled to a Partial Discharge.

"[A] bankruptcy court has the discretion to order a partial discharge of a separate debt arising out of the terms of a divorce decree." *Graves v. Myrvang* (*In re Myrvang*), 232 F.3d 1116, 1124 (9th Cir. 2000). The grant of a partial discharge must be supported by specific findings and conclusions. *Id.* When considering the appropriateness of a partial discharge, "this Court has concluded that a 'necessary prerequisite to this type of relief is a showing that the debtor can pay some, but not all, of the subject debt.'" *Drnjevic v. Marvin* (*In re Marvin*), 02.3 I.B.C.R. 119, 122 (Bankr. D. Idaho 2002) (quoting *Brazington v. Brazington* (*In re Brazington*), 01.3 I.B.C.R. 104, 106 n. 14 (Bankr. D. Idaho 2001)).

Insufficient evidence was presented at trial to persuade the Court that even a partial discharge of the divorce debts is appropriate in this case. Indeed, considering Defendant's capacity to earn, the Court is inclined to believe that Defendant, if he so desired, could eventually pay both his child support obligation and additional monies towards the divorce debts. On this record, the Court concludes Defendant is not entitled to a partial discharge.

## Conclusion

Defendant's obligations to pay child support, provide medical insurance and a life insurance policy naming Plaintiff as beneficiary are support obligations not subject to discharge in bankruptcy under § 523(a)(5).

In addition, if Plaintiff is required to pay any of Defendant's debts for which he was responsible under the Judgment and Agreement, namely the Visa account, and the three business debts, the resulting obligation to Plaintiff is also nondischargeable pursuant to § 523(a)(15).

A separate judgment will be entered.

Dated: September 18, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge